# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON, | No. 2:17-cv-00138-KJM-AC |
| Plaintiff, | |
| v. | ORDER |
| SIU KEUNG CHAN, RITA NGAN CHAN, HANESHINDER SINGH CHAUHAN, | |
| Defendants. | |

Plaintiff Scott Johnson alleges defendants violated Title III of the Americans with Disabilities Act of 1990 ("ADA") and the California Unruh Civil Rights Act ("Unruh Act") by failing to provide a parking space and restroom accessible to individuals with disabilities at their Sacramento Subway restaurant, and moves for summary judgment. Mot., ECF No. 22. Defendants did not respond to the motion. As explained below, the court GRANTS in part and DENIES in part plaintiff's unopposed motion for summary judgment.

I.   BACKGROUND

Plaintiff is a quadriplegic who cannot walk and has significant manual dexterity impairments. UMF 1. Plaintiff uses a wheelchair for mobility and drives a van specially equipped with a lift to accommodate his wheelchair. UMF 1−2. To safely deploy his lift and exit his van, plaintiff requires a van accessible spot with an eight-foot access aisle. UMF 13. Otherwise, his van spills over to the adjacent parking stall, exposing him to the risk of being

struck by another car or having a vehicle park next to his van, blocking him from re-entry. UMF 14−15.

Defendants own a Subway restaurant located at 6530 Florin Road, Sacramento, California. UMF 3, 5−6. On both June 27, 2016 and August 2, 2016, plaintiff went to defendants' Subway restaurant for lunch. UMF 7. When he first drove into the Subway's parking lot, plaintiff identified a single parking spot marked for use by persons with disabilities, but the marking was faded. UMF 9−10. Further, there was no "No Parking" marking stenciled on the access aisle next to the parking space to deter persons without disabilities from parking there. UMF 11. In addition, the spot's access aisle was painted white, not blue. UMF 12. On his June 27, 2016 visit to defendants' Subway, plaintiff left his van lift deployed to avoid being blocked in by an adjacent car. UMF 17. On his August 2, 2016 visit, plaintiff parked in a van-accessible parking spot at a nearby retail center instead of parking at the Subway. UMF 19.

Plaintiff also encountered difficulties accessing and using the defendants' Subway restaurant. The restroom needed to be unlocked with a key, which required plaintiff to twist his wrist and grasp the key tightly. UMF 21−23. This was difficult for plaintiff because of his manual dexterity impairments. UMF 23. Once in the restroom, he was unable to see his reflection because the bathroom mirror was mounted too high above the sink. UMF 24. The sink was mounted too high for him to use. UMF 25. The disposable toilet seat cover dispenser was mounted above the toilet, with no clear floor space in front of it. UMF 26. These issues caused plaintiff difficulty, discomfort and frustration. UMF 27.

Plaintiff returned to defendants' Subway restaurant on June 17, 2016, July 21, 2016 and July 30, 2016, "but his knowledge of the violations . . . deterred him from even attempting to patronise [sic] it." UMF 28. Defendants subsequently made several changes to the restaurant. UMF 30. Plaintiff filed the instant suit on January 23, 2017. ECF No. 1. On June 29, 2017, Gary Walters, plaintiff's expert, conducted a site inspection of the restaurant and determined it still has several barriers. UMF 31−32; *see* UMF 33−41 (describing remaining barriers).

/////

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247−48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587−88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

/////

---

[1] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

3

District courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

A court may not grant summary judgment by default. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013); *see* Fed. R. Civ. P. 56(e). But the court may grant an unopposed motion for summary judgment where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III. DISCUSSION

    A. Americans with Disabilities Act

Title III of the ADA prohibits "discriminat[ion] against [an individual] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Further, "[a]ny violation of the ADA necessarily constitutes a violation of the Unruh Act." *Id.* at 731 (citing Cal. Civ. Code § 51(f)).

        1. Disability and Place of Public Accommodation

As to the first element, plaintiff submits unrebutted evidence indicating he is "disabled" as defined in the ADA, as he is a quadriplegic with significant manual dexterity

impairments who uses a wheelchair for mobility. Johnson Decl., ECF No. 22-5, ¶ 2; *see* 42 U.S.C. § 12102(1)(A) (defining term "disability" as "a physical or mental impairment that substantially limits one or more major life activities"). Under the second element, plaintiff has established that defendants' Subway restaurant is a public accommodation, as it "is a facility open to the public," and "a business establishment." UMF 4; *see* 42 U.S.C. § 12181(7) (identifying "private entities [that] are considered public accommodations," including "a restaurant, bar, or other establishment serving food or drink").

### 2. Discrimination

Discrimination under Title III "includes 'a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable.'" *Molski*, 481 F.3d at 730 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv) (original alterations)). An alteration is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* (quoting 42 U.S.C. § 12181(9)); *see* 28 C.F.R. § 36.304 (identifying examples of barriers for which removal is likely readily achievable). To satisfy the discrimination element, plaintiff must prove "(1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Ridola v. Chao*, No. 16-cv-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal., May 18, 2018) (citations omitted). The ADA Accessibility Guidelines ("ADAAG") define, in part, whether a business is "readily accessible" under the ADA. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (citations omitted). Also, where "physical construction or alterations commence on or after March 15, 2012, then new construction and alterations subject to this section shall comply with the 2010 [ADAAG] Standards." 28 C.F.R. § 35.151(c)(3).

#### a. Accessible Parking Spaces

In his two 2016 visits to defendants' Subway, plaintiff found the single accessible parking space had "badly faded" paint and an access aisle that was painted white instead of blue and not marked "NO PARKING." Johnson Decl. ¶¶ 6−9; Anderson Decl., ECF No. 22-8, ¶¶ 4−7 (plaintiff's investigator identifying same parking space deficiencies in January 9, 2017 inspection) & ECF No. 22-9 at 6 (photo of parking space). Plaintiff argues that although

5

defendants "re-painted and altered the handicap parking space, it is still not fully compliant," identifying the following remaining deficiencies: (1) "There is a sign indicating that unauthorized vehicles parked in accessible spaces will be towed, however, the required reclaim Information [sic] is not provided" and (2) "The wheel stops are not located so the front overhang of parked vehicles does not encroach into the required clear width of the walk." Mot. at 10; *see* Waters Decl., ECF No. 22-10, ¶ 8 (plaintiff's second investigator indicating he conducted an inspection on June 29, 2017); Waters Report, ECF No. 22-11, at 5 (identifying these issues with parking space). In light of these deficiencies, plaintiff contends there is no dispute but that the parking space is not accessible under the ADA. Mot. at 10.

As to the parking space deficiencies plaintiff identified in his 2016 visits[2] and the reclaim information that remains missing from the tow-away sign, plaintiff makes no attempt to explain how, specifically, these deficiencies violated the ADA. He argues that under both the 1991 and 2010 ADAAG standards, a certain number of spaces must be available and those spaces must meet precise measurement requirements. Mot. at 13. But plaintiff does not argue defendants' Subway lacked the requisite number of spaces or that it did not meet the measurement requirements. Rather than contending the deficiencies violated any express ADA or ADAAG provisions, plaintiff argues, "[u]nder the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local law or regulations." *Id.* (citations omitted); *see* Advisory Note to 2010 ADAAG § 502.3.3. And because the identified deficiencies purportedly violate the California Building Code ("CBC"),[3] plaintiff contends they violate the ADA. *Id.*

---

[2] Johnson does not identify whether the 1991 or 2010 ADAAG standard controlled prior to defendants' remedial efforts, arguing "it does not matter which Standard is applied because the parking did not comply with either Standard." Mot. at 13 n.1.

[3] Plaintiff claims these deficiencies violate California Building Code § 1129B.4, though it appears he may have intended to cite § 11B-502.6. *See* http://www.bsc.ca.gov/Codes.aspx (last visited on June 10, 2019). In a separate case, plaintiff was notified that his reference to § 1129B.4 could not be identified. *See Johnson v. Lababedy*, No. 2:16-CV-0126 KJM AC, 2016 WL 4087061, at *4 (E.D. Cal. Aug. 2, 2016) ("[T]here are no sections '1129B.4' or '1129B.3 in the current California Building Code.") (footnote omitted).

6

In a similar case, this court adopted a magistrate judge's finding that "persons trying to comply with the ADAAG 'may' look to the CBC for guidance on how to ensure that access aisles are properly marked. However, the CBC requirements are not mandatory, and failure to comply with them does not amount to a violation of the ADA." *Johnson v. Lababedy*, No. 2:16-CV-0126 KJM AC, 2016 WL 4087061, at *4 (E.D. Cal. Aug. 2, 2016) (findings and recommendations citing *Eiden v. Home Depot USA, Inc.*, 2006 WL 1490418, at *8 (E.D. Cal. 2006)); *see also Johnson v. Lababedy*, No. 2:16-CV-0126 KJM AC, ECF No. 17 (order adopting findings and recommendations in full). Several other courts have reached the same conclusion. *Shaw v. Kelley*, No. 16-CV-03768-VKD, 2019 WL 497620, at *4 (N.D. Cal. Feb. 7, 2019) ("[A] purported failure to comply with a provision of the California Building Code is not a violation of the ADA.") (emphasis omitted); *Johnson v. 42816 Mission Blvd LLC*, No. 17-CV-03040-CRB, 2018 WL 3008677, at *2 (N.D. Cal. June 15, 2018) ("Johnson's attempt to premise an ADA violation on the California standard regarding lettering fails."); *Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054, 1066, 1068 (E.D. Cal. 2006) (granting defendant's motion for summary judgment as to claim tow-away signage did not comply with CBC); *but see Lozano v. C.A. Martinez Family Ltd. P'ship*, 129 F. Supp. 3d 967, 972 (S.D. Cal. 2015) (granting plaintiff's motion for summary judgment on ADA claim in part based on finding defendant's parking spaces did not comply with California Building Code requirements). Plaintiff has not identified any basis for this court's revisiting its prior conclusion that an ADA violation may not be established though a CBC violation, nor has he clearly identified any ADAAG standard defendants violated. The court therefore finds plaintiff is not entitled to summary judgment as to the parking space deficiencies that plaintiff contends existed prior to defendants' remediation or the reclaim information that remains missing from the tow-away sign.

Plaintiff also provides no explanation as to how the wheel stop[4] violates the ADA, though his expert's report cites 2010 ADAAG § 502.7. *See* Waters Report at 8. Section 502.7

---

[4] Plaintiff does not define "wheel stop," though an advisory note in the 2010 ADAAG notes, "[w]heel stops are an effective way to prevent vehicle overhangs from reducing the clear width of accessible routes." 2010 ADAAG, advisory note to § 502.7.

7

provides only: "Parking spaces and access aisles shall be designed so that cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes." 2010 ADAAG § 502.7 (emphasis omitted). In his report, plaintiff's expert states, "The accessible parking space and access aisle are constructed so that, due to the location of the accessible space and the wheel stop, front [sic] of a vehicle parking in the accessible space will overhang the required width of the walk and will encroach into the required pull side maneuvering space of the door." Waters Report at 5. But plaintiff's expert does not identify the required width of the walk or the significance of the overhang. *See id.* In fact, he provides no concrete detail whatsoever, including even basic measurements, to support his conclusion. *See id.* On this record, the court cannot find plaintiff is entitled to summary judgment on his claim that the wheel stop violates the ADA.

Plaintiff's motion for summary judgment as to the parking space violations is DENIED.

            b.        <u>Accessible Restroom</u>

Plaintiff also argues the restroom in defendants' Subway restaurant was inaccessible at the time of his two 2016 visits because he was forced to use a key that requires grasping and twisting to gain access to the restroom, the "sink was mounted higher than the [34 inches] permitted," the restroom contained insufficient clear floor space, and the restroom mirror "was mounted higher than the [40 inches] permitted." *See* Mot. at 15 (citing both 1991 and 2010 ADAAG standards); *see* Tyler Decl. ¶¶ 9–11. He argues these "barriers were apparently removed by Defendants and were no longer an issue as of June, 2017 [sic]," Mot. at 15, which shows removal was readily achievable, *see Wilson*, 439 F. Supp. 2d at 1069.

Plaintiff argues that the restroom remains inaccessible despite the changes, because "[t]he required geometric symbol does not have the required contrast," (2) "the required wall mounted room signage is not provided," (3) "the clear width of the door . . . is less than 32 [inches] clear," (4) the "hot water and waste line under the lavatory is not insulated," (5) the "toilet is not centered 17" to 18" from the sidewall to the centerline," (6) the "rear wall grab bar is not located correctly . . . [and] extends less than 12" from the centerline," and (7) the bathroom

8

tissue "dispenser is oversized" and improperly centered. Mot. at 15−16. As with his parking space claims, plaintiff's motion does not specifically identify any ADA provision defendants violated. *See id.* The Waters Report fares better. *See* Waters Report at 10−11 (identifying specific provisions of 1991 and 2010 ADAAG standards applicable to plaintiff's claims). While plaintiff's claim in the complaint regarding the geometric door sign arises purely from the CBC and, as discussed above, cannot constitute an ADA violation here, the balance of his complaints regarding the restroom arise from specific ADAAG requirements. There is no evidence rebutting plaintiff's claims. The court GRANTS his motion for summary judgment in this respect. *See id.*

   B.   California Unruh Act

Plaintiff also seeks relief under the Unruh Act, which provides: "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Cal. Civ. Code § 51(f) (internal citation omitted). While the ADA offers only injunctive relief, each violation of the Unruh Act carries a minimum $4,000 penalty. *Id.* § 52(a); *see id.* § 55.56(f) ("Statutory damages may be assessed . . . based on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred."). Here, plaintiff seeks $8,000 under the Unruh Act. Mot. at 19. Because it is undisputed that plaintiff visited defendants' restaurant multiple times and encountered barriers that constitute ADA violations on each occasion, his motion is GRANTED with respect to the Unruh Act.

IV.   CONCLUSION

As explained above, the court GRANTS in part and DENIES in part plaintiff's motion for summary judgment. Specifically, the court DENIES plaintiff's motion for summary judgment as to purported barriers to the accessible parking space and GRANTS plaintiff's motion for summary judgment as to barriers in the accessible restroom, except as to his claim that the required geometric symbol does not have the required contrast. Plaintiff is entitled to injunctive relief as to his claims regarding the non-compliant restroom conditions, again with the exception of the claim regarding the contrast of the geometric symbol, and defendants are ORDERED to

9

alter the restroom to make the facility readily accessible and useable by individuals with disabilities.

A final pretrial conference is scheduled for August 1, 2019 at 2:30 p.m. The parties are ordered to file the required joint pretrial statement by seven (7) days before.

IT IS SO ORDERED.

DATED: June 11, 2019.

_____
UNITED STATES DISTRICT JUDGE